# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE ZOUHAIR "DANNY" HILAL, | § | |
| *Debtor.* | § | |
| _____ | § | |
| | § | |
| ZOUHAIR "DANNY" HILAL, | § | |
| | § | |
| *Appellants,* | § | |
| | § | CIVIL ACTION H-06-2366 |
| | § | |
| vs. | § | |
| | § | |
| | § | BANKRUPTCY CASE NO. 05-36909-H2-11 |
| RANDY W. WILLIAMS, TRUSTEE., | § | |
| | § | |
| *Appellee.* | § | |

## ORDER

Pending before the court is appellant Zouhair Hilal's appeal of the bankruptcy court's June 30, 2006 Order Confirming Chapter 11 Trustee's Second Amended Plan of Reorganization ("Confirmation Order"). Upon consideration of the parties' briefs, the record, and the applicable law, the court is of the opinion that this appeal should be DISMISSED on the grounds of equitable mootness.

## I. BACKGROUND

Appellant Hilal filed a voluntary Chapter 11 bankruptcy petition on February 4, 2005. Appellee Williams was appointed as appellant's Chapter 11 Trustee. Williams, in his capacity as Trustee, proposed a plan of reorganization to liquidate and distribute Hilal's assets among his various creditors, including the Internal Revenue Service ("I.R.S."). Hilal raised a number of objections to the First Plan of Reorganization, so Williams proposed a Second Amended Plan ("the Plan"), to which Hilal also objected. Following a confirmation hearing, the bankruptcy court issued a Memorandum Opinion, Findings of Fact and Conclusions of Law, and an Order Denying Certain

Objections to Confirmation of the Second Plan on June 26, 2006. Dkt. 3, Ex. 18.

Upon one creditor's objections to some of the June 26 changes, the bankruptcy court ordered further revisions to the Plan in its Confirmation Order of June 30, 2006, Dkt. 1, Ex. 1, with which appellant Hilal fundamentally disagrees. Particularly, appellant objects to the Plan's provision that leaves appellee Williams, the appointed "Plan Agent," with discretion to litigate Hilal's future claims against creditor Riner.[1] Dkt. 15 at 7-8. Appellant also takes issue with the scope of the Plan's exculpation provision and the method of compensating the Plan Agent. Dkt. 15 at 10-12. These objections form the basis for this appeal.

## II. ANALYSIS

Appellant, asserting that the Second Amended Plan of Reorganization is invalid, asks the court to reverse the bankruptcy court's Confirmation Order of June 30, 2006, and remand the matter to the bankruptcy court for further consideration. Dkt. 15 at 12.

### A.     Equitable Mootness

Notwithstanding alleged defects in the Plan, Appellee Williams argues that this appeal is moot and should be dismissed. Dkt. 17 at 9.

#### 1.     *Standard of Review*

In a bankruptcy context, mootness (termed "equitable mootness"[2]) "is a recognition by the

---

[1]The Appellee, as Hilal's Trustee, settled a claim by creditor Stephen Riner for $5,000,000 ("the Riner Compromise"), which was approved by the bankruptcy court. The claim arose from an adverse civil judgment rendered against Hilal in state court, the interest of which was assigned to Riner as the attorney for the plaintiff in that matter. Appellant took issue both with the amount of the settlement and employment of counsel for the Trustee (and the resulting attorneys' fees) in that matter. Hilal has unsuccessfully litigated the Riner Compromise before the bankruptcy court, the district court, and the Fifth Circuit. The Fifth Circuit recently affirmed the validity of the Riner Compromise, holding that further litigation and appeal of the settlement was moot. *Hilal v. Williams* (In re *Hilal*), No. 06-20751, 2007 U.S. App. LEXIS 7567, at *4-7 (5th Cir. Apr. 2, 2007).

[2]*See, e.g., TNB Fin., Inc. v. James F. Parker Interests* (In re *Grimland, Inc.*), 243 F.3d 228, 231 (5th Cir. 2001).

2

appellate courts that there is a point beyond which they cannot order fundamental changes in reorganization actions." *Id.* at 1039. Essentially, where there has been "substantial consummation" of a reorganization plan "such that judicial relief is no longer available," a reviewing court may decline to consider the merits of a confirmation order. *Id.* "Determinations of mootness . . . require a case-by-case judgment regarding the feasibility or futility of effective relief should a litigant prevail." *Manges v. Seattle-First Nat'l Bank* (In re *Manges*), 29 F.3d 1034, 1043 (5th Cir. 1994) (citing In re *AOV Indus.*, 792 F.2d 1140, 1147-48 (D.C. Cir. 1986)). In a mootness inquiry, "the reviewing court may take notice of facts not available to the trial court if they go to the heart of the court's ability to review." *Id.* at 1041.

　　　2.　　*Analysis*

　　　The Fifth Circuit applies the following three-factor test to determine whether an appeal of a reorganization plan is moot: "(1) whether a stay has been obtained, (2) whether the plan has been 'substantially consummated,' and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *Id.*; *see also Hilal*, 2007 U.S. App. LEXIS 7567, at *4-5 (applying the three-factor test to Hilal's challenge of the Riner Compromise).

　　　　　a.　　Whether a stay has been obtained

　　　The purpose of a stay is to ensure that the reviewing court can evaluate a plan's validity before third parties rely on it. *See Manges*, 29 F.3d at 1039-40; *Cleveland v. Thibaut*, 166 B.R. 281, 286-87 (Bankr. E.D. La. 1994). An unsuccessful attempt to obtain a stay has the same effect as a failure to seek a stay pending appeal. *AOV Indus.*, 792 F.2d at 1147.

　　　Here, Appellant has neither sought nor obtained a stay pending appeal from the bankruptcy court. Dkt. 17 at 10. Additionally, the Fifth Circuit, in finding Hilal's appeal of the Riner Compromise moot, determined that Hilal's failure to obtain a stay, "militates in favor of dismissal

3

for mootness." *Hilal*, 2007 U.S. App. LEXIS 7567, at *6 (quoting *United States* ex rel. *FCC v. GWI PCS 1, Inc.*, 230 F.3d 788, 801 (5th Cir. 2000)).

        b.    <u>Whether the plan has been substantially consummated</u>

"Substantial consummation" is a term borrowed from the Bankruptcy Code, used for determining "whether a reorganization plan may be amended or modified by the bankruptcy court." *Manges*, 29 F.3d at 1040 (citing 11 U.S.C. §§ 1101(2), 1127(b)). In a mootness context, substantial consummation "informs [a court's] judgment as to when finality concerns and the reliance interests of third parties upon the plan as effectuated have become paramount to a resolution of the dispute between the parties on appeal." *Id.* at 1041; *see also, e.g.*, In re *Block Shim Dev. Company-Irving*, 939 F.2d 289, 291 (5th Cir. 1991); *accord* In re *Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992). The Bankruptcy Code defines "substantial consummation" as

    (A)    transfer of all or substantially all of the property proposed by the plan to be transferred;

    (B)    assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

    (C)    commencement of distribution under the plan.

11 U.S.C. § 1101(2). In short, a plan has been substantially consummated where "substantially all property has been transferred under the plan, the debtor has assumed control of substantially all property, and distribution of property has commenced." *Hilal*, 2007 U.S. App. LEXIS 7567, at *6-7.

The Third Circuit has noted that "the strong public interest in the finality of bankruptcy reorganizations is particularly compelling" when a reorganization plan has been substantially consummated. In re *Continental Airlines*, 91 F.3d 553, 561 (3d Cir. 1996). The Fifth Circuit has also explained that the substantial consummation question "rests on the need for finality, and the

4

need for third parties to rely on that finality, in bankruptcy proceedings." *TNB Fin., Inc. v. James F. Parker Interests* (In re *Grimland, Inc.*), 243 F.3d 228, 231 (5th Cir. 2001); *see also generally Nationwide Mut. Ins. Co. v. Berryman Prods., Inc.* (In re *Berryman Prods.*), 159 F.3d 941, 944-45 (5th Cir. 1998); *Manges*, 29 F.3d 1034.   Given these concerns, the Fifth Circuit has construed "substantial consummation" relatively leniently so long as a plan's wheels have been substantially set in motion.  *See, e.g.*, *GWI PCS 1 Inc.*, 230 F.3d at 802 (finding substantial consummation even though the debtors had not yet obtained all the financing required under the plan and had yet to fulfill other requirements under the plan); *Ins. Subrogation Claimants v. U.S. Brass Corp.* (In re *U.S. Brass Corp.*), 169 F.3d 957, 961 (5th Cir. 1999) (holding that "the transactions that have taken place to date, the exchange of mutual releases, the disbursements already made, and the general implementation of the plan by all the involved parties evidence substantial consummation of the plan").

The Plan at issue has been in effect since July 11, 2006.[3] Appellee asserts that he, as Plan Agent, has already "sold the vast majority of the unoccupied real property in the limited liability companies' inventory." Dkt. 17 at 10.  Though appellee offers no evidence to support the sales and payments mentioned in his brief,[4] the court "may review evidence as to subsequent events not before the courts below which bears upon the issue of mootness." *Manges*, 29 F.3d at 1041; *see also* In re *Crystal Oil Co.*, 854 F.2d 79, 81 (5th Cir. 1988); In re *Roberts Farms*, 652 F.2d 793, 796 (9th Cir. 1981).

---

[3]The bankruptcy court's Confirmation Order of June 30, 2006 defines the effective date of the Plan as "the 11th day after entry of the Confirmation Order." Dkt. 1, Ex. 1 at 2.

[4]Appellee estimates that 102 properties have been sold and that he "has executed earnest money contracts, warranty deeds, litigation settlements, and other binding obligations like real estate listing agreements in his capacity as plan agent." Dkt. 17 at 10. Appellee also alleges that he has "paid all ad valorem taxes on the properties owned by the [LLCs]" and  "spent a substantial amount of estate funds to maintain the condition of the properties owned by the [LLCs]." *Id.*

Appellee asserts that he and the IRS have been working since 2006 to determine Hilal's total liabilities to the Government, and that distributions pursuant to the Plan will be made once the bankruptcy court finalizes them. Dkt. 17 at 11.  Appellee also urges consideration of payments for professional services that "could not be returned if the plan were unwound."  *Id.*

Appellee's allegations are confirmed by a review of the bankruptcy court's proceedings. According to the bankruptcy schedules, coordinated efforts with the IRS to determine Hilal's liabilities are well underway.  *See* Scheduling and Case Management Order, In re *Hilal*, Ch. 11 Case No: 05-36909, Dkt. 735, Apr. 9, 2007 (noting the various upcoming deadlines for the IRS for discovery and filing).  The district court that reviewed the Riner Compromise also explained that the majority of Hilal's assets have already been transferred to the Trustee for disbursement under the Plan.  *See Hilal v. Williams*, Case No. H-05-3776, 2006 U.S. Dist. LEXIS 55386, at *15-16 (S.D. Tex. Aug. 9, 2006) (Werlein, J.) (finding that "the trustee has acquired control of First Capital and Blue Moon for the bankruptcy estate" and noting that First Capital and Blue Moon make up "the principal assets of the estate"), *aff'd*, 2007 U.S. App. LEXIS 7567 (5th Cir. Apr. 2, 2007).  The Fifth Circuit also recognized (ruling on the Riner Compromise) that at least one creditor (Riner) has already been paid $4,250,000 out of the bankruptcy estate and that the IRS has received $750,000 on his behalf. *Hilal*, 2007 U.S. App. LEXIS 7567, at *7.  Operating reports also indicate that a total of $10,413,789 has already been disbursed under the Plan as of April 2007.  *See* Monthly Operating Report Summaries, In re *Hilal*, Ch. 11 Case No: 05-36909, Dkts. 691 at 7, 717 at 7, 739 at 7, May 15, 2007 (This figure was calculated by adding up the 'total disbursements' for each month from June 2005 to April 2007).  Because the bulk of Hilal's reachable assets have been transferred to the bankruptcy estate, and because distribution has substantially commenced, substantial consummation has occurred and weighs in favor of a finding of mootness.

6

c.   Whether the relief requested would affect either the rights of parties

not before the court or the success of the plan.

Lastly, the Fifth Circuit recognizes that "substantial consummation of a reorganization plan

is a momentous event, but it does not necessarily make it impossible or inequitable for an appellate

court to grant effective relief." *GWI PCS 1 Inc.*, 230 F.3d at 802 (quoting *Manges*, 29 F.3d at 1042-

43). Thus, a court will consider the effects of a proposed remedy on third parties before ending its

mootness inquiry. *See id.* at 802-03 (stating that the court "must evaluate the transactions that have

occurred under the reorganization plan against the backdrop of the relief sought"). Where the relief

requested would invalidate a reorganization plan entirely, it is more likely to adversely affect third

parties who have relied on it. *Manges*, 29 F.3d at 1043 ("We must evaluate these transfers, many

of which appear irreversible, against the backdrop of the relief sought--nothing less than a wholesale

annihilation of the Plan.").

Here, Hilal's two dominant creditors are Stephen Riner and the IRS. *See Hilal*, 2006 U.S.

Dist. LEXIS 55386, at *15-16. Riner has already been paid $4,250,000 out of the bankruptcy estate

and submitted $750,000 to the IRS to pay his taxes on that transfer. *See Hilal*, 2007 U.S. App.

LEXIS 7567, at *7. Appellee claims that "[t]he IRS has spent over five months reviewing the

debtor's records and preparing a report regarding [Hilal's] tax liability," and that "[c]ontract

counterparties, real property purchasers, adverse litigation parties as well as the IRS have relied upon

the representations and authority of the Plan Agent since the entry of the Confirmation Order." Dkt.

17 at 8. Though appellee offers no evidentiary support for this statement, recent activity in the

bankruptcy court suggests that the IRS is currently conducting discovery and litigating the amount

of back taxes owed by Hilal. *See* Scheduling and Case Management Order, In re *Hilal*, Ch. 11 Case

No: 05-36909, Dkt. 735, Apr. 9, 2007.

7

Even if the appellee is correct that the "IRS ha[s] relied upon the representations and authority of the Plan Agent**,"** this does not necessarily suggest that the IRS would be adversely affected by this Court's treatment of the Plan.  Certainly, abolishing the Plan would not effect a determination of Hilal's tax liability.  However, the District Court for the Western District of Texas recently found this prong satisfied where the relief requested "would substantially affect the success of the plan in that it would jeopardize fundamental aspects of the plan as approved by the bankruptcy court."  *GE Capital Corp. v. Torres Concrete Pumping Servs.*, Case No. SA-04-CA-56-XR, 2004 U.S. Dist. LEXIS 7678, at *10 (W.D. Tex. Apr. 16, 2004).  Further, in that case, the challenger only sought modification of a reorganization plan.  *Id.* at 11.  By contrast, Hilal seeks complete reversal of the June 30 Confirmation Order, which would unravel the Plan entirely.

Many third parties will be affected if the Plan's confirmation is abrogated.  Recent operating reports indicate that numerous disbursements have been made to creditors under the Plan.[5]  Additionally, a number of third parties have already been paid for professional services.[6]  Because such a remedy would disturb a year's worth of effort on behalf of the bankruptcy court, the IRS and Trustee Williams, and because wholesale revocation of the Plan would likely affect a number of irreversible transfers to third parties, this factor also weighs in favor of mootness.

### III. Conclusion

In sum, the Plan has been implemented and relied upon to such an extent that unraveling it at this point would be unfair and likely impossible.  The appellant has not obtained a stay pending appeal–so for nearly a year Hilal's creditors, including the IRS, have been operating under the Plan

---

[5]*See, e.g.*, Monthly Operating Report Summary for April 2007, *In re Hilal*, Ch. 11 Case No: 05-36909, Dkt. 739, May 15, 2007 (indicating that in April 2007 alone, $1,290,368 was disbursed).

[6]*See, e.g.*, *id.* (indicating that in April 2007, $140,368 was paid for professional services).

and relying on its terms.  Because the appellant did not obtain a stay, the Plan has become substantially consummated.  To date, the bulk of Hilal's assets have been transferred to the Trustee for distribution and more than ten million dollars have been distributed pursuant to the Plan.  To rule as Hilal requests and rescind confirmation of the Plan would have adverse consequences to third parties.  Substantial sums have already been paid that will likely be unrecoverable should the Plan be deemed invalid.

For the foregoing reasons, the court finds that "it would be plainly inequitable for this court to consider the merits of [Hilal's appeal]."[7] *Crystal Oil*, 854 F.2d at 82.  Accordingly, this appeal is DISMISSED.

It is so ORDERED.

Signed at Houston, Texas on June 22, 2007.

_____
Gray H. Miller
United States District Judge

---

[7] Even if the court were to consider the merits, the Plan does not appear to violate the Bankruptcy Code. Appellant requests that the Court abrogate confirmation of the whole Plan because of three, largely insubstantial provisions.

First, the provision granting the Plan Agent the right to pursue litigation against Riner if the settlement is overturned on appeal is fair and equitable to *creditors*, as required by the Bankruptcy Code. *See* 11 U.S.C. § 1129(b)(1)(a) (requiring that a plan be "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan"); *see also* In re *D & F Constr., Inc.*, 865 F.2d 673, 675 (5th Cir. 1989) (explaining that § 1129(b)'s fair and equitable requirement involves consideration of "the entire plan in the context of the rights of the creditors"). Appellant's argument that the Plan "coerces" him into not pursuing appellate review is unfounded. Appellant has had his day in court before the Fifth Circuit and should he wish to seek a writ of certiorari from the Supreme Court, the Plan will not penalize him.

Second, appellant's argument that the exculpation provision must include an exception for simple negligence contradicts clear Fifth Circuit precedent, which sets the trustee standard for liability at gross negligence–an exception provided for in the Plan. *See Dodson v. Huff* (In re *Smyth*), 207 F.3d 758, 762 (5th Cir. 2000) (holding that "trustees should not be subjected to personal liability unless they are found to have acted with gross negligence").

Lastly, appellant cannot reasonably argue that an hourly rate of compensation for the Plan Agent is a better option, given that it results in a greater cost to his estate. Therefore, if this appeal was not moot, the court would affirm the Confirmation Order.

9